IN RE APPPROPRIATION FOR HIGHWAY PURPOSES: MASHETER, DIR. OF HWYS., APPELLANT, *v.* DIVER ET AL., APPELLEES.

(No. 3383—Decided January 31, 1969.)

*Mr. William B. Saxbe,* attorney general, *Mr. Harry N. Kandel* and *Mr. Harry R. Paulino,* for appellant.
*Mr. Frank Bodor* and *Mr. James E. Thorpe,* for appellees.

*Per Curiam.* This appeal on questions of law arises from a judgment entered on a jury verdict on October 26, 1967, in an appropriation proceedings instituted by the appellant, Director of Highways, against Frank E. Diver and others, appellees.

Appellant filed a resolution and finding to appropriate .22 of an acre (9584 sq. ft.) of land of which .11 of an acre (4792 sq. ft.) is within the existing highway right-of-way.

The land to be appropriated fronts to the north of U. S. Route 62 and the parcel of the land which the director appropriated amounted to approximately 37 feet off the front width of appellees' lot which dimensions are 140.03 feet on the front by 466.6 feet in depth on the south side of U. S. Route 62. A driveway existed on the west side of appellees' property, which was the only means of ingress and egress.

The original resolution and finding stated, in pertinent part, as follows:

"Court of Common Pleas, Stark County, Ohio

"In the Matter of the Appropria- )
tion by the State of Ohio of the )
Fee for Highway Purposes of the )
Lands of Frank E. Diver, et al, and ) Resolution and
necessary in the construction and ) Finding
improvement of State Route No. )
U. S. 62, Section 28.93, Stark )
County, Ohio. )

"Whereas, I have been unable to purchase certain hereinafter described property, needed in the construction and improvement of State Route No. U. S. 62, Section 28.93, Stark County, Ohio, *which highway has been declared a limited access highway or freeway,* in accordance with Section 5511.02 of the Revised Code of Ohio, and recorded on August 2, 1962, in Volume 47, page 791, of the Journal of the Director of Highways.

"Therefore, I find it is necessary for the public convenience and welfare and in accordance to Section 5501.11 of the Revised Code of Ohio, that action be taken under Section 5519.01 and related sections of the Revised Code of Ohio, to appropriate, in fee simple, the property hereinafter described in accordance with the plans and specifications on file in the Department of Highways, Columbus, Ohio, from the following named owners:" (Emphasis ours.)

A motion by the director to amend the original resolution and finding was sustained by the trial court in the following respects:

"* * * by striking from said resolution and finding the portion of paragraph 1 declaring the parcel as being a part of a limited access highway or freeway. Also, to add (27.99) after the words 'section 28.93' in the heading and paragraph 1."

A jury verdict was returned for appellees in the amount of $350 compensation for the land taken, and $14,150 as damages to the residue, and same was reduced to

judgment from which the director appeals and sets forth the following assigned error:

1. The court erred in holding in instructing the jury that the term "fee title" for highway purposes incorporated therein the taking of access rights and included the right to sell and extinguish all rights in the owner.

It became very evident from reading the record of the opening statement of counsel for appellees that the trial court adopted the appellees' contention and maintained it during the course of the trial in that the Director of Highways was seeking to appropriate a fee simple title in 175-WD (highway) which describes the parcel sought and which fee simple title would include all access and reversionary rights. The appellees contend also that the plans and specifications on file are irrelevant and immaterial to the issue of just compensation.

The plans and specifications are prepared pursuant to Section 5517.01, Revised Code, which provides, in part, as follows:

"The Director of Highways shall make a map of the highway, in outline and profile, and plans, specifications, profiles, and estimates covering proposed projects. * * * and cause one copy thereof to be placed on file in his office and another in the office of the division deputy director of highways for public inspection * * *."

As previously mentioned, the trial court granted the motion of appellant in striking from the resolution and finding "a limited access highway or freeway." It then becomes a question as to what property the director seeks to appropriate, which must be in accordance with the plans and specifications which relate to and cover the proposed project.

It thus becomes the appellant's contention that the trial court committed prejudicial error in refusing to permit the testimony of the divisional engineer for the Department of Highways, which would have shown the uses to which the land sought to be appropriated would be put as affecting owner-appellees' property, as well as the identity of the plans and specifications to be entered or to be

introduced into evidence during the course of the trial. Timely objections were made by counsel for the director to the rulings of the trial court in this respect. This we hold to be prejudicial error to appellant (director). See *Masheter, Dir. of Hwys.,* v. *Junk,* 5 Ohio St. 2d 254, at page 256 as follows:

"The Court of Appeals pointed out that the landowners would not be prejudiced by allowing the amendment to correspond with the facts, *and in all fairness the director was entitled to show the plan for the construction of the driveway as bearing on the amount the owners should be awarded for the* property taken and the damage to the residue." (Emphasis ours.)

The record reveals the testimony of Donald Hamilton, an appraiser holding the designation of M. A. I., who testified on behalf of the appellees that he had examined the plans and specifications of this particular project known as 175-WD (highway) and we find the following testimony on direct examination.

"Q. Mr. Hamilton, from your first inspection of this property and your experience as a real estate appraiser, I will ask you whether or not you have an opinion as to the fair market value of the entire property before the appropriation, that is prior to June 1, 1967? A. I do.

"Q. That is the land and the buildings now, is that correct? A. That's right.

"Q. And what is that opinion? A. $22,000.00.

"Q. Mr. Hamilton, I will ask you if you have an opinion as to the fair market value of Parcel No. 175-WD taken in this case?

"Mr. Kandel: Objection.

"The Court: Overruled.

"A. I do.

"Q. And what is that opinion? A. $350.00.

"Q. Now Mr. Hamilton, do you have an opinion as to the fair market value of the residue before the take? A. I do.

"Q. What is that opinion?

"Mr. Kandel: Objection.

"The Court: The objection is overruled.

"A. $21,650.00.

"Q. Now Mr. Hamilton, I will ask you if you have an opinion as to the fair market value of the residue after the take? A. I do.

"Q. What is that opinion?

"Mr. Kandel: Objection.

"The Court: Overruled.

"A. $7,000.00.

"Q. Mr. Hamilton, could you tell the jury what the amount of damages are in your opinion in this case? A. $14,650.00.

"Q. Mr. Hamilton, could you tell the court and jury what the total compensation in your opinion is due and owing to this property owner by virtue of this taking and the damage to the residue?

"Mr. Kandel: Objection.

"The Court: The objection is overruled.

"A. $15,000.00.

"Q. Now Mr. Hamilton, in arriving at the value of the entire property in this case could you tell the court and jury how much of that figure you have relegated to the land and how much, if anything, to the structures?

"Mr. Kandel: Objection.

"The Court: Overruled.

"A. The fair market value of the land, $7,000.00; the fair market value of all of the structures, $15,000.00; for a total value of the entire property of $22,000.00.

"Q. Now Mr. Hamilton, are you acquainted with the quantity of land that is being taken in this case? A. Yes, I am.

"Q. What is the quantity, please? A. The area of Parcel No. 175-WD is described in two parts, 5,181.11 square feet of fee simple, all right, title and interest is taken plus 4,620.99 square feet of qualified fee which is held subject to the existing highway easement."

Mr. Hamilton further testified as follows:

"Q. Mr. Hamilton, in your appraisal of that property and your experience in the real estate field, did you make a comparison of the access that this property owner had prior to the appropriation as compared to after the appropriation? A. I did.

"Q. Would you explain the basis which you arrived at your appraisal of the damages regarding access? A. The larger parcel before the take was 104.03* access across the entire front of the property. After the take, there is no access because they are taking all right, title and interest from the owner. Before the property owner had an absolute fee simple title and all that interest is being taken and nothing will remain in it—no right will remain to the owner of the property.

"Mr. Kandel: I ask that the last answer be stricken and the jury be instructed to disregard it.

"The Court: Overruled.

"A. Except a court of equity would probably grant an easement.

"Mr. Kandel: Objection.

"The Court: Overruled.

"A. A court of equity would probably grant an easement of necessity but that would take a lawsuit and how wide a driveway the court would permit and for where is unknown.

"Mr. Kandel: I ask that the last answer be stricken and the jury instructed to disregard it.

"The Court: Overruled.

"Q. Did you take this latter statement regarding this so-called possible easement of necessity into consideration in arriving at the assessment of damages in this case? A. I did. In valuing it before the taking and in valuing it after the taking, I took into consideration what a willing buyer would pay for this property after this parcel is taken noticing that there is no access and that he may be buying a law suit to enforce access.

"Mr. Kandel: I ask that the last answer be stricken and the jury instructed to disregard it.

"The Court: Overruled.

"Q. Now Mr. Hamilton, did you determine the percentage of front yard that was being taken from this owner by the territory in parcel 175-WD?

---

*This foot frontage figure is obviously a mistake of either the witness or the court reporter. We find from the record that the correct foot frontage figure is 140.03.

"Mr. Kandel: Objection.

"The Court: The objection is overruled.

"A. Yes, sir, I made some measurements from the front of the north side of the house to the present right of way is 65 feet. The width of the fee simple part taken is 37 feet, so the house sits back 102 feet from the existing right of way before the appropriation."

Also the following testimony on cross-examination of Mr. Hamilton, as follows:

"Q. Did you study the plan for any other reasons other than the square footage of that taking?

"Mr. Bodor: Objection.

"The Court: Sustained.

"Q. Mr. Hamilton, did you testify on direct examination that you studied the plans? A. Yes, sir.

"Q. Actually, Mr. Hamilton, you used those plans to see whether or not those plans revealed anything about the construction?

"Mr. Bodor: Objection.

"The Court: The objection will be sustained.

"Q. Did those plans reveal anything other than the amount of footage being taken?

"Mr. Bodor: Objection.

"The Court: The objection will be sustained.

"Mr. Kandel: (Quietly at the bench, out of the hearing of the jury.) So there is no misunderstanding, am I precluded from going into the plans at all?

"The Court: That's right.

"Mr. Kandel: And this refusal is even though this witness testified he studied the plans, so there is no misunderstanding?

"The Court: There is no misunderstanding, no.

"Mr. Kandel: All right.

"* * *

"Q. This would be land-locked, wouldn't it? A. Yes, sir.

"* * *

"Q. How would you get in and out of it? A. By Helicopter."

We find this testimony to be highly prejudicial to ap-

pellant, in that, on pages 32 and 33 of the record, the plans and specifications, appellant's Exhibit No. 1, we find the following stipulation between counsel for appellant and counsel for appellees as follows:

"The Court: The questions are merely preliminary to offering the exhibit.

"Mr. Kandel: Yes, sir.

"Mr. Bodor: We will be willing to stipulate and agree that these are the particular records that pertain to U. S. Route 62—

"Mr. Kandel: And that it shows the Diver property and the construction plans for the Diver property.

"Mr. Bodor: We will so stipulate.

"Mr. Kandel: All right, under those circumstances, I will proffer into evidence based upon the agreement of counsel plaintiff's Exhibit No. 1 in its entirety.

"Mr. Bodor: So that there is no question about the stipulation on the proffer in evidence we are stipulating to the fact that these are the plans and specifications of State Route 62 and part of which pertains to the Diver property.

"Mr. Kandel: I am now making the proffer of this. If the court please, so the record will be clear, I first of all will offer into evidence plaintiff's Exhibit No. 1.

"Mr. Bodor: Objection.

"The Court: Sustained.

"Mr. Kandel: Now at this time, I proffer into evidence plaintiff's Exhibit No. 1."

The plans and specifications definitely reveal that the driveway to the west of the property in question will remain intact less the 37 feet appropriated by the state and in addition thereto the plans reveal a driveway to be placed on the east side of the property in question. Here again it is our finding that the director should have been permitted to show the true situation by having all the evidence as to the land being taken for highway purposes as described *in accordance with the plans and specifications on file in the Department of Highways, Columbus, Ohio.* See 5 Ohio St. 2d, 254, *Masheter, Dir. of Hwys.,* v. *Junk, supra,* at page 256 as follows:

"In an appropriation proceeding by the director, the public interest is involved as well as the interest of the owner, and the owner should not be allowed a possible windfall where he is not entitled to it."

Appellees submitted the following requests to charge before argument, which were given to the jury over objection by counsel for appellant as follows:

"Special Instruction No. 1.

"You are instructed as a separate proposition of law that the state is taking all rights, title and interest in fee simple in the land appropriated as parcel No. 175-WD and that after this appropriation the property owner will no longer have any property rights, title or interest in said property appropriated.

"Special Instruction No. 2.

"You are instructed as a separate proposition of law that you may take into consideration any and all damages to the residue of the property owner's land which, as may be shown by the evidence, are the necessary and reasonably certain results of the severance of part of the property from the whole and any use by the state of Ohio or its successors of those portions taken by the state of Ohio."

The trial court, in its general charge, also instructed the jury in effect that all accesses and reversionary rights of the landowners were being taken. Again, timely objections and exceptions were taken by counsel for appellant.

We find no language in the amended resolution and finding, the plans and specifications, that would warrant a conclusion that the Director of Highways sought to appropriate any rights of access and reversionary rights in the taking of 175-WD (highway). The instructions, therefore, constituted prejudicial error to appellant, and appellant's assignment of error is sustained.

For the foregoing reasons herein enumerated, the judgment is reversed and the cause remanded for a new trial and further proceedings according to law.

*Judgment reversed.*

McLaughlin, P. J., and Van Nostran, J., concur.

RUTHERFORD, J., dissenting. After the amendment striking the provision as to limited access highway, and adding 27.99 after the words "Section 28.93," the amended resolution upon which the director made the appropriation in the instant case, reads as follows:

"COURT OF COMMON PLEAS, STARK COUNTY, OHIO

"In the Matter of the Appropria- )
tion by the State of Ohio of the )
Fee for Highway Purposes of the )
Lands of Frank E. Diver, et al., and )  Resolution
necessary in the construction and )   and Finding
improvement of State Route No. )
U. S. 62, Section 28.93, 27.99, Stark )
County, Ohio.                         )

"WHEREAS, I have been unable to purchase certain hereinafter described property, needed in the construction and improvement of State Route No. U. S. 62, Section 28.93, 27.99, Stark County, Ohio, * * *.

"THEREFORE, I find it is necessary for the public convenience and welfare and in accordance to Section 5501.11 of the Revised Code of Ohio, that action be taken under Section 5519.01 and related sections of the Revised Code of Ohio, to appropriate, *in Fee Simple*, the property hereinafter described in accordance with the plans and specifications on file in the Department of Highways, Columbus, Ohio, from the following named owners:" (Emphasis added.)

If under this resolution and finding the state took a fee simple title to the property appropriated, the balance of the land became landlocked without means of ingress or egress. The court instructed the jury that it should so consider it in awarding damages to the residue and the final judgment awarded a fee simple title to the state. Under such circumstances, the verdict is not excessive.

The majority opinion takes the position that, while the caption of the resolution and finding sets forth that the

appropriation is "of the fee," and although by the resolution and finding of the director finds it necessary to appropriate "in fee simple," the appropriation was not of a title in fee simple but was something else in accordance with the plans and specifications on file in the Department of Highways, Columbus, Ohio.

Can the director specify that he is appropriating "in fee simple" and then appropriate a lesser title by adding the words "in accordance with the plans and specifications on file in the Department of Highways, Columbus, Ohio," or when a fee simple title is being appropriated must any reservation or exception be more specifically set forth in the resolution and finding?

If the take is in accordance with the plans and specifications on file in Columbus, there is no way to determine from the records in the county where the land is located what has been appropriated unless exceptions are set forth in the final journal entry. Is the property owner not entitled to know at the outset the nature of the title being taken? Further, if limitations are to be determined by the plans and specifications and the property owner retains an easement for driveway purposes because the plans and specifications so specify, does not the state also become limited in its use of the property appropriated to that of highway purposes in the manner indicated by the plans and specifications; and if the state, instead of appropriating a fee simple title as specified, intended to appropriate only an easement for highway purposes or only a conditional fee for so long as the property is used for highway purposes in accordance with the plans and specifications, with title, upon discontinuance of use, to revert to the landowner, should not the director be required to so specify in the resolution and finding instead of specifying that the appropriation is "in fee simple"?

In my opinion, the right of the director to appropriate obligates him to be sufficiently specific by stating, in the resolution and finding, the nature of the title appropriated, so as to advise the landowner what is being taken and to advise all future purchasers of the residue from the land-

owner what has been taken so as not to leave a cloud upon the title, which will become a deterrent to future sales.

If the director wishes to take a fee simple title but reserve to the landowner the right to ingress and egress to and from the residue, all he has to do is specify in the resolution and finding that the appropriation is of a fee simple title, subject to an easement for purpose of ingress and egress with the location being specified, and if he wishes a further limitation he need only further specify that such easement continue only for so long as the property appropriated continue to be used for highway purposes. He would thus acquire a fee simple title with reservations noted, which title would become evidenced in the recorder's office by judgment entry made in accordance with the resolution and finding. On the other hand, if the director wants only a conditional fee or an easement, he should be required to so specify in his resolution and finding.

Had the director timely requested to amend the resolution and finding he could have done so, but to this date no request to amend so as to provide for an appropriation other than in fee simple has been made in this case.

It is the director who prepares the resolution and finding and makes the election as to the nature of the title to be appropriated. In this case, he specified a fee simple title with no specific reservations to the landowner. The journal entry has granted the state of Ohio a fee simple title, and the director having expressed no timely desire to further amend the resolution and finding, the judgment ought to be affirmed.